IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO


BARBARA  MOHON,

      Plaintiff,

vs.                                                                    Case No. 1:18-cv-00915-KK-SCY

AGENTRA  LLC,  TRACYANN  NICOLE
HAMILTON  and  Jane Does 1-10,

      Defendants.


### <u>PLAINTIFF'S  RESPONSE TO AGENTRA LLC'S MOTION TO DISMISS</u>


TO THE HONORABLE COURT:


A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable.  *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).  Detailed factual allegations are not required provided the claim asserted is plausible on its face and does not contain unsupported legal conclusions.  *Id*. The degree of specificity necessary to establish plausibility and fair notice ("notice pleading"), and therefore the need to include sufficient factual allegations, depends on context or the type of case.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1248  (10th Cir. 2008).  In judging Defendant's motion the Court should understand in context that in a telemarketer-harassment case there are not typically large numbers of facts to plead.  There are relatively few material facts.

Only two (2) allegations are necessary to state the basic **Subsection B** TCPA claim: telemarketer called her phone, and telemarketer did so using a pre-recorded message or an automatic telephone dialing system ("auto-dialer" or "robo-call"). *Breslow v. Wells Fargo Bank*, 857 F.Supp.2d 1316, 1319 (S.D. Fla. 2012); *Ott v. Mortg. Investors Corp*, 65 F.Supp.3d 1046, 1059-60 (D. Or. 2014). Plaintiff's Complaint also amply gives notice of multiple "do not call" or **Subsection C** violations because the Complaint states her phone number is listed on the National Do Not Call Registry (see 47 C.F.R. §64.1200(c)(2)) and Agentra's telemarketers refused to identify themselves or honor even Plaintiff's specific do-not-call requests.

Even though Plaintiff Mohon does so, a TCPA plaintiff is not required to state her telephone number in her pleadings. *Buslepp v. Improv Miami, Inc.*, no. 12-cv-60171, 2012 WL 1560408, at *1 (S.D. Fla. May 4, 2012); *Manfred v. Bennett Law, PLLC*, No. 12-cv-61548, 2012 WL 6102071, at *2 n.2 (S.D. Fla. Dec. 7, 2012); *Jackson v. HSBC Mortgage Services, Inc.,* no. 2:14-cv-1240, 2014 WL 5100089, at *4 (N.D. Ala. Oct. 10, 2014) ("if there is a question about the phone number at issue, it can be addressed through discovery"). Information such as the frequency and dates of the calls and the telephone numbers from which the robo-calls were received is not necessary to put defendants on notice of the conduct charged, because "such information is more likely to be in [defendants'] records and accessible through discovery." *Sprogis v. Suntrust Bank*, No. 6:13-cv-635, 2013 WL 2456090, at *2 (M.D. Fla. June 6, 2013). The Court should thus reject any argument that the absence of particularities as to robo-calls warrants dismissal for failure to state a claim. Specific information with respect to the robo-calls can be verified through discovery and is not essential to putting defendants on notice of the conduct charged.

**Plaintiff's Complaint sufficiently alleges Agentra's Vicarious Liability based on**

**Actual Authority, Apparent Authority or Ratification**

The courts owe deference to a federal agency's interpretation of a statute it administers. *Mainstream Marketing Serv., Inc. v. FTC,* 358 F.3d 1228, 1236 (10th Cir. 2004) **Exhibit 1 hereto** is pertinent portions of the FCC's *Dish Network* decision regarding TCPA-defendants' liability due to their agency relationships (hereinafter "*Dish*"). An introduction to the rules is summarized at paragraphs 34-37 of Plaintiff's Complaint (Exhibit A to Defendant's Notice of Removal, Doc 1-1 filed on 9/28/18). *Dish* considered the question whether an entity could be liable for calls it did not "make" or "initiate", where the calls were actually made by others pursuant to contracts stating they were "independent contractors" and where the contracts promised to comply with the TCPA. See *Dish* paragraphs 5 and 8 and its footnote 102. See paragraph 10 along with the balance of the decision: vicarious liability under the TCPA is **"on behalf of"** liability. **Exhibit 2 hereto** in support of this Response is portions of the FCC's *Dialing Services LLC* decision ("*Dialing Services*"). The FCC's interpretation of "making" illegal phone calls is to "***look for a direct connection between a person or entity and the making of a call***". *Dialing Services*, paragraph 16.

TCPA vicarious liability is based on federal common law principles of agency. *Imhoff Invest., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015). This includes not only formal agency but also principles of apparent authority and ratification. *Hossfeld v. GEICO*, 88 F.Supp.3d 504, 510 (D. Md. 2015). Any other interpretation of the TCPA "would allow companies to evade TCPA liability simply by creative contracting." *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-cv-6131, 2014 WL 3014874, at *3 (E.D.N.Y. July 3, 2014). Congress

enacted the TCPA to protect people from telemarketing calls they did not previously consent to. *Smith v. State Farm. Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 774 (N.D. Ill. 2014). Sellers like Agentra are "in the best position to monitor and police third-party telemarketers' compliance with the TCPA." *Id.* Permitting them to avoid liability "by outsourcing their telemarketing activities to ***unsupervised*** third parties would leave consumers . . . . . without an effective remedy . . . . . particularly when the telemarketers are judgment proof, *unidentifiable*, or located outside the United States." *Id.* Imposing vicarious liability avoids these pitfalls and supports the very purpose of the TCPA. *Id.* (citing to paragraph 37 of *Dish*).

At paragraph 46 of *Dish*, the FCC stated examples of evidence that will support a finding of vicarious liability for unlawful telemarketing calls:

> "the seller ***allows the outside sales entity access to information and systems*** that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ***ability by the outside sales entity to enter consumer information into the seller's sales or customer systems***, ***as well as the authority to use the seller's trade name, trademark and service mark*** may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the ***seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct***." (emphasis added)

Therefore paragraphs 38, 43 and 45 of Plaintiff's Complaint coupled with the allegations of its other paragraphs, are more than mere labels and conclusions, adequately give notice and plausibly allege Agentra is vicariously liable for the calls to Plaintiff. Paragraph 46 of *Dish*

concludes with the guidance that plaintiffs should be allowed "evidence of these kinds of relationships . . . . . through discovery, if they are not independently privy to such information."

Paragraphs 20-33 of Plaintiff Mohon's Complaint describe in detail numerous unlawful telemarketing calls that violated the TCPA.  Paragraph 20 clearly gives notice Plaintiff is claiming Agentra is vicariously liable because "Defendants or their telemarketers" made the calls.   In *Aranda v. Carribean Cruise Line*, 179 F.Supp.3d 817 (N.D. Ill. 2016), such an allegation was held sufficient to put the defendants on notice of plaintiff's theory of vicarious liability because "the whole point of plaintiffs' allegations is that it is difficult to tell where one defendant stops and the next one starts . . . . . [a]nd in their amended consolidated complaint, plaintiffs repeatedly alleged that '[d]efendants and/or their agents made unsolicited telephone calls in violation of the TCPA."  See *Id*. at 830.

Paragraphs 39-45 of Mohon's Complaint allege specific, undisputed *facts* that directly connect Agentra to the calls for "on behalf of" vicarious liability.  Paragraphs 42 and 44 show that, even at the pleadings stage of this case, Mohon has evidence Agentra   (1)  "allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including access to detailed information regarding the nature and pricing of the seller's products and services",   (2)  the outside sales entity (Hamilton and the Jane Doe defendants) has an ability to "enter consumer information into the seller's sales systems, as well as the authority to use the seller's trade name, trademark and service mark" and  (3)  Agentra delegated to others the ability to make a contract between Agentra and Plaintiff and exercised control over that process.  See  *Hossfeld v. GEICO*, 88 F.Supp.3d 504, 510-511 (D. Md. 2015)

5

comparing the plaintiff's pleadings to paragraph 46 of *Dish*.    Agentra cannot explain how Plaintiff's detailed statements of *facts* are mere labels or just "legal conclusions".

The copy of "Exhibit 3" to the Complaint (see its paragraph 44) that Agentra attached to its Notice of Removal (see pages 18 and 36 of Doc. 1-1) is of very poor quality.    The text message (clearly legible within the copy of Exhibit 3 filed in the state court) says  -

> **"Barbara J.,**
> **Welcome to Agentra**
> **Healthcare Solutions.**
> **PLEASE CHECK YOUR EMAIL**
> **FOR IMPORTANT COVERAGE**
> **INFORMATION**
> **Questions?  Call**
> **800-656-2204  x2"**

Mohon has set forth details regarding the phone calls she received and her theory for how Agentra participated in them.

Actual authority under the TCPA has been frequently litigated.  In a hotly contested case that produced a summary judgment order spanning more than 200 pages, *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 921 (C.D. Ill. 2017) the court held:

> "The Restatement definition contains two key aspects: (1) the principal and agent agree that the agent acts for the principal; and (2) the agent is subject to the control of the principal. See also *In re Aguilar*, 511 B.R. 507, 513 (Bankr. N.D. Ill. 2014). The principal need only have the right to control the agent; the agency exists even if the principal does not exercise that right. See *Schutz v. Arrow Fin. Servs.*, LLC, 465 F.Supp.2d 872, 877 (N.D. Ill. 2006). The determination of whether an agency exists is a factual issue.  See *Spitz v. Proven Winners of North America LLC*, 759 F.3d 724 (7th Cir. 2014)."

Plaintiff sufficiently alleges that Agentra controlled aspects of the telemarketing at issue, and Agentra _admits_ there is an actual agency between it and Defendant Hamilton (see General Agency Agreement attached to Agentra's Motion to Dismiss).  The contract between Agentra and the co-defendant attached to Agentra's motion confirms Plaintiff's allegations and includes even more specifics about the relationship between the parties as it relates to Agentra's right to control the actions of its agents.  That contract between Agentra and Defendant Hamilton says:

> "Agentra Health desires to engage the services of General Agent to market and sell the insurance policies marketed by Agentra Health."

> "Before soliciting any potential customer or client, General Agent agrees to obtain and maintain insurance and/or other licenses required by law for the solicitation of insurance sales."

> "General Agent also agrees that he/she will maintain all necessary licenses and errors and omissions insurance coverage to perform his/her insurance sales and marketing duties[.]"

> "Due to various insurance laws and regulations, General Agent agrees that he/she will request and obtain approval from Agentra Health prior to distributing any piece of advertising of any kind or nature which bears the name Agentra Health. General Agent must also have prior written approval from Agentra Health for any advertising where the Company name is used to solicit business on behalf of Agentra Health, as well as the prior written approval from any carrier whose name is used in any advertising used to solicit business on behalf of Agentra Health."

By permitting its agents to contractually bind Agentra with the agreements marketed and sold to customers, Agentra has assented to these agents acting on its behalf.  *See* Restatement §1.01, cmt g, illus. 11 (a company that negotiates and enters into contracts between a principal corporation and third parties acts on behalf of the principal corporation and thus is an agent in connection with those contracts).

An additional indicator of Agentra's control or ability to control is that its very own contract indicates agents are paid pursuant to a "commission schedule".  Presumably discovery would confirm commissions are based on the numbers of <u>sales</u> as opposed to the amount of <u>time</u> an agent spends marketing.  As stated at paragraph 45 of Plaintiff's Complaint, Agentra sets and controls the parameters for when a sale can be made (and hence commission paid).  Discovery would presumably also show whether Hamilton was marketing what Agentra calls "health insurance" for companies other than Agentra, or whether she was marketing solely for Agentra.

Agentra's contract with its agents includes a broad, boilerplate statement that agents will comply with all applicable laws, rules, and regulations.  However as the FCC has recognized "under federal common-law principles of agency", "the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability."  See Exhibit 1 hereto, paragraph 34 of *Dish* and its footnote 102.  Similarly, regarding Agentra's contractual provision that the agents are independent contractors, "[t]he designation of a party in a contract as an independent contractor is not conclusive as to the status of that party as an independent contractor." *Durkey v. Pac. Life Ins. Co.*, Civil Action No. 17-317, 2017 U.S. Dist. LEXIS 124294, at *28 (W.D. Pa. Aug. 4, 2017).  The manner in which the parties designate a relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of the other, notwithstanding he is not so called.  *Sutton v. Chevron Oil*, 85 NM 679, 515 P.2d 1283, 1285 (1973).   *Id.*   See also again paragraphs 5 and 8 of *Dish* itself where the underlying contention of the sellers in *Dish* was that they could not be legally responsible for their third-party robo-callers because the sellers had labeled them "independent contractors".

The text message from Agentra, Exhibit 3 to the Complaint and referred to at its paragraph 44,**1** further shows that the co-defendants were acting under Agentra's control and direction because Agentra directed Plaintiff to call it at 800-656-2204 if she had any questions. This is substantively similar to *Dobkin v. Enter. Fin. Grp.*, no. 2:14-cv-01989, 2014 US Dist. LEXIS 123317, at *12 (D. NJ, Sep. 3, 2014) where a motion to dismiss was denied in a TCPA case holding that "Plaintiff's allegation that Precise representatives directed consumers to a website which automatically rerouted to EFG's website suggests that EFG exerted control over Precise's telemarketing strategy."

The telemarketing agents of Agentra also acted with implied actual authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2006). Actual authority can be implied through words or conduct. *Id.* § 2.01 cmt. b. By agreeing to pay Hamilton commissions Agentra impliedly conveyed to her that her telemarketing efforts were authorized and would be rewarded.

New Mexico state law recognizes that actual agency may be implied by a course of conduct showing an intention that agency exists. Rule 13-401, NMRA. Also in New Mexico the principle (Agentra) is liable for the unlawful telemarketing of the agent (Hamilton and the Jane Doe defendants) because Agentra had the right to control that conduct even though its right

---

1        "Barbara J.,   Welcome to Agentra Healthcare Solutions.   PLEASE CHECK YOUR EMAIL
FOR IMPORTANT COVERAGE INFORMATION     Questions?  Call 800-656-2204  x2"

of control may not have been exercised.  Rule 13-402, NMRA.  An agent's scope of authority embraces not only his actual authority but also that apparently delegated.  *Echols v. N.C. Ribble Co.*, 85 NM 240, 243, 511 P.2d 566, 569 (Ct.App. 1973) cert denied.

"Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal."  Restatement (Third) of Agency § 2.03 cmt. c (see also again paragraph 34 of *Dish*).  Plaintiff plausibly states a claim for Agentra's vicarious liability based on actual authority but **apparent authority is evident as well**.  Mohon has clear manifestations of Agentra to support her beliefs including, again, the evidence described at paragraphs 42 and 44 of her Complaint.

Plaintiff's Complaint adequately states facts to support an agency relationship by **ratification as well**.  The fundamental principle of ratification is that one may not accept the benefits of a transaction without also bearing its legal consequences.  Restatement (Third) of Agency § 4.07 cmt. b (2006).  "The sole requirement for ratification is a manifestation of assent or other conduct indicative of consent by the principal.  To be effective as a ratification, the principal's assent need not be communicated to the agent or to third parties whose legal relations will be affected by the ratification."  *Id.* § 4.01 cmt. b.  "[W]hen a person ratifies another's act, the legal consequence is that the person's legal relations are affected as they would have been had the actor been an agent acting with actual authority at the time of the act."  *Keim v. ADF Midatlantic, LLC,* No. 12-cv-80577, 2015 U.S. Dist. LEXIS 159070, at *27 (S.D. Fla. Nov. 10, 2015) (seller's acceptance of benefits of telemarketer's TCPA violations constitutes ratification

precluding dismissal).    Judge Marra's Order denying the motion to dismiss in *Keim*, Doc. 114

filed in the case on 11/10/15, was more detailed and refers expressly to paragraph 47 of Dish

(Exhibit 1 hereto):

> "Keim also alleges that Pizza Hut "approved or authorized" Songwhale and Cellit
> to promote the Pizza Hut brand. (DE 97 ¶¶ 18–19.) This is sufficient to plead
> Pizza Hut's vicarious liability for Songwhale and Cellit's alleged TCPA
> violations. See Dish Network Order at 6593 ("*[W]e see no reason that a seller
> should not be liable under [section 227(b)] for calls made by a third-party
> telemarketer when it has authorized that telemarketer to market its good or
> services. In that circumstance, the seller has the ability, through its
> authorization, to oversee the conduct of its telemarketers, even if that power to
> supervise is unexercised*."). Indeed, Plaintiff alleges that Cellit sent text messages
> on behalf of both Pizza Hut and the ADF Companies to promote the Pizza Hut
> brand across the United States."

The FCC has made clear that ratification applies to the TCPA.  *Dish* ¶ 34 ("[A] seller

may be liable for the [telemarketing] of another under traditional agency principles if it ratifies

those acts by knowingly accepting their benefits.").  "Ratification occurs when an agent acts for

a principal's benefit and the principal does not repudiate the agent's actions." *Aranda v.

Caribbean Cruise Line, Inc.,* 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016).  Ratification may occur

even though the agent's acts were unauthorized by the principal.  *Id.* at 833.   Ratification has

also been defined in New Mexico as "the adoption or confirmation by a principal of an

unauthorized act performed on its behalf by an agent".  *Ulibarri Landscaping v. Colony

Materials*, 1981-NMCA-148, 97 N.M. 266, 270, 639 P.2d 75, 79.  A principal who expressly or

impliedly elects to ratify unauthorized acts of an agent will not be permitted to accept the

benefits and reject the burdens of the acts.  *Id*.    Again, relevant discovery in this case will

include the extent and scope of sales and commissions exchanged between Agentra and Defendant Hamilton as well as some assessment of whether Agentra ***"knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct"*** (quoting from para. 46 of *Dish).*

Many courts have appropriately recognized that in the context of a TCPA case assessing vicarious liability (the agency relationship) is a fact-intensive inquiry inappropriate for resolution at the 12(b)(6) stage and even inappropriate to resolve on summary judgment where material facts are in dispute as to the nature of the relationship between the parties.  See for example  -

> *Kristensen v. Credit Payment Servs.*, 12 F.Supp.3d 1292 (D. Nev. 2014) (District Court denies motion to dismiss TCPA claims, finding that plaintiff had sufficiently plead "a plausible agency relationship);

> *Brodsky v. HumanaDental Ins. Co.*, no. 10-cv-3233, 2014 U.S. Dist. LEXIS 80790 (N.D. Ill. June 12, 2014) (denying defendant's motion for summary judgment as to vicarious liability claim for violations of the TCPA's "junk fax" provisions);

> *McCabe v. Caribbean Cruise Line, Inc.*, 13-cv-6131, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014) (defendant's motion to dismiss TCPA vicarious liability claims denied);

> *Legg v. Voice Media Grp., Inc.*, 20 F.Supp.3d 1370 1377 (S.D. Fla. 2014) (denying both plaintiff's and defendant's motions, noting "summary judgment on vicarious liability is appropriate only in cases where evidence of the relationship is clear and unequivocal");

> *The Siding & Insulation Co. v. Combined Ins. Grp., Ltd*, 2014 U.S. Dist. LEXIS 54056 (N.D. Ohio Apr. 17, 2014) (denying plaintiff's motion for summary judgment because "a disputed issue of material fact exists on the question of [defendant's] apparent authority");

> *Imhoff Inv., LLC v. SamMichaels, Inc.*, 2014 U.S. Dist. LEXIS 4965 (E.D. Mich. Jan. 15,
> 2014) (denying plaintiff's motion because the "issue of agency turns on the control
> exercised" by the alleged principal "which cannot be determined as a matter of law").

Even much older state law as to agency is helpful.   The question of "control" exercised over an

agent is an issue of fact unsuitable for summary judgment.  *Sutton v. Chevron Oil*, 85 NM 679,

515 P.2d 1283 (1973).   The manner in which the parties designate a relationship is not

controlling, and if an act done by one person on behalf of another is in its essential nature one of

agency, the one is the agent of the other, notwithstanding he is not so called.  *Id.*  at 1285.  And

the issue of "control" of the agent is only relevant to whether or not there is actual agency:

> "Even if there were not a material issue as to whether or not Chevron asserted
> enough control as to create an actual master-servant relationship, there still exists
> a material issue as to whether or not Chevron had clothed the lessee with apparent
> authority.
>
> In 3 Am.Jur.2d, Agency, § 74, at 477 (1962), it is stated:
>
> 'The apparent authority of an agent is to be determined by the acts of the
> principal, and not by the acts of the agent; a principal is responsible for the acts of
> an agent within his apparent authority only where the principal by his acts or
> conduct has clothed the agent with the appearance of authority."  *Id.*  at  1286.

In  *Santa Fe Techs. v. Argus Networks,* 2002-NMCA-030,  the Court examined the issue

of conspiracy as a basis for personal jurisdiction.  Personal jurisdiction based on conspiracy rests

on principles of agency.  *Santa Fe Techs.* at ¶ 30.  But **the existence of agency is a question of**

**fact**.  *Id.* at ¶ 26.   Agentra even cites a case at paragraph 35 of its motion, *Beneficial Finance v.*

*Alarcon*, 1991-NMSC-074, stating that "an intent to ratify is a question of fact", and throughout

its motion asserts its own self-serving version of disputed facts as grounds for dismissal before

Plaintiff Mohon has even been able to conduct some discovery.   But for purposes of a Rule 12(b)(6) motion the Court must accept Plaintiff's version of the facts as true.

Agentra also speciously claims it only made one (1) manual or human-made outbound call to Plaintiff.  The issue at hand is Agentra's vicarious liability for robo-calls made by others and described by Plaintiff Mohon in her Complaint.   Again, paragraph 20 of Plaintiff's Complaint clearly gives notice Plaintiff is claiming vicarious liability because "Defendants or their telemarketers" made the calls.   Also again, in *Aranda v. Carribean Cruise Line*, 179 F.Supp.3d 817 (N.D. Ill. 2016), such an allegation was held sufficient to put the defendants on notice of plaintiff's theory of vicarious liability.

### Plaintiff states claims for Agentra's violations of the New Mexico Unfair Practices Act

Plaintiff asserts vicarious liability as the basis for all her state-law claims against Agentra too, and based on the same evidence and arguments detailed above.  So when the Court finds Plaintiff's Complaint plausibly allows reasonable inferences that Agentra is vicariously liable for the federal claims, the same reasonable inferences apply to and support the state-law claims. New Mexico state law as to agency is not materially different from the federal common-law.[2]

§57-12-22(B) of the Unfair Practices Act ("the UPA") makes it unlawful to make a telephone solicitation "without disclosing within fifteen seconds of the time the person being called answers the name of the sponsor and the primary purpose of the contact".  Agentra says

---

2   See for example *Romero v. Mervyns*, 109 N.M. 249, 253 (1989); *Segura v. Molycorp, Inc.*, 97 N.M. 13, 19–20 (1981);  *Robertson v. Carmel Builders Real Estate*, 135 N.M. 641, 652 (Ct. App. 2004).

Plaintiff's Complaint fails to state a UPA claim because  (1) the UPA does not protect cell phone users and   (2) even if it does, it is again not vicariously liable.    Agentra's argument as to vicarious liability should be rejected for the reasons set forth above including citations to state law as to agency.  Agentra is simply incorrect that the UPA doesn't protect cell phone users.

Plaintiff states a claim without question pursuant to the UPA because of paragraph 46 of her Complaint.   Her cell phone at all relevant times has been continuously listed on the National Do Not Call Registry.   A listing on the registry creates a legal presumption that the phone number registered is "residential".    Additional evidence Mohon's cell phone qualifies as "residential" is paragraphs 15, 21, 29, 42 and 44 of her Complaint:   Defendants sought to interest her in "health insurance".

Pursuant to the Telemarketing Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 et seq., the Federal Trade Commission ("FTC") adopted the Telemarketing Sales Rule ("TSR"), which is set forth at 16 C.F.R. § 310.1 et seq.   The 2003 amendments to the TSR extended the protections of the National Do-Not-Call Registry to cell phone users in addition to users of residential landlines.   The FCC likewise extended the protections of the Registry to cell phones.  See for example the detailed discussion of this legislative process set forth in  *United States v. Dish Network LLC*, 75 F.Supp.3d 916 (C.D. Ill. 2014).   47 C.F.R. § 64.1200(e) states

> The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

*United States v. Dish Network LLC*, supra, amply quotes from **FCC 03-153** but Plaintiff attaches its pertinent paragraphs 32-36 as **Exhibit 3** in support of this Response for the Court's review. FCC 03-153, ¶¶ 34–36, discusses whether a subscriber to a wireless service could be considered a residential telephone subscriber.  The FCC found that many consumers elect to use a cell phone for personal or residential purposes, and concluded ".  .  .  .  .  . *we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers."*

The FCC's definition of "residential subscriber", as discerned from FCC 03-153, is merely "a consumer who elects to use a telephone, including a wireless telephone, for residential purposes."   A listing on the National Do-Not-Call Registry, as Mohon states at paragraph 46 of her Complaint, creates a presumption the number called is a residential number.   This definition is consistent with the UPA's definition of  "residential subscriber" at NMSA §57-12-22(D)3 which is merely:   "a person who has subscribed to residential telephone service".   In other words, the distinction between "residential" and "non-residential"  turns simply on the **use** of the phone, not on the <u>type</u> of phone.   See also for example the FCC's premise in paragraph 34 of FCC 03-153 that "where wireless service actually has displaced a residential land line, and functions as a consumer's primary residential telephone service", that user is going to be considered a residential user.

When considering the intent of the New Mexico legislature to protect telephone consumers, note UPA §57-12-22 was promulgated by the legislature in 1989 before "wireless" or cell-phone capability was common or even known.   Paragraphs 10 and 11 of Plaintiff's Complaint cite FCC 15-72, 2015 WL 4387780 (July 10, 2015).   The provisions referred to are

attached hereto as **Exhibit 4** in support of this Response including the FCC's additional fact-finding at paragraph 7 of the Declaratory Ruling and Order:

> "39 percent of adults were wireless-only in the second half of 2013, compared to fewer than three percent of adults at the beginning of 2003."**3**

### Plaintiff's Complaint states claims for Nuisance and Trespass to Chattels

Unrestricted telemarketing is "a nuisance". *Mims v. Arrow Fin. Servs., LLC* , 565 U.S. 368, 372, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012). Abusive telemarketing can "waste the recipients' time" and may even "impede the free flow of commerce." *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc*., 757 F.3d 540, 544 (6th Cir. 2014). Congress passed the TCPA to combat "the nuisance". **Exhibit 3 hereto** (FCC 03-153), para. 36. In New Mexico, the relief to be awarded for nuisance rests in the discretion of the court. *Hase v. Summers*, 35 NM 274, 295 P. 293 (1930). New Mexico definitions of nuisance as involving interests in real property are not exclusive definitions. In *Denney v. United States*, 185 F.2d 108 (10th Cir. 1950) the Court considered New Mexico common-law nuisance claims and stated:

> the term "nuisance" defies universal definition, in legal contemplation it may fairly be said to be the unreasonable, unwarranted, or unlawful use of property, which causes injury, damages, hurt, inconvenience, annoyance or discomfort to one in the legitimate enjoyment of his reasonable right of person or property (*citations omitted*). Nuisances are classified as nuisances per se and nuisances in fact. A nuisance per se is generally defined as an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings, while a nuisance in fact is commonly defined as an act, occupation, or structure not a nuisance per se, but one which may become a nuisance by reason of circumstances, location, or surroundings. See *Id*. at 110.

---

3       The Court may take judicial notice of legislative facts when considering legislative intent. *Korematsu v. United States*, 584 F.Supp. 1406, 1404 (N.D. Ca 1984).

The New Mexico Supreme Court referred to the *Denney* court's definition of nuisance as "excellent". *Koeber v. Apex-Albuq. Phoenix*, 380 P.2d 14, 15, 72 N.M. 4 (1963).

Trespass to chattels (in this case a cell phone) is intentional interference with a chattel in the possession of another, without justification. *Texas-New Mexico Pipeline v. Allstate Construction*, 70 NM 15, 369 P.2d 401 (1962). To be liable for trespass to chattels a defendant must commit an intentional act done for the purpose of interfering with the chattel or with knowledge that his act was reasonably certain to result in an interference with it. *Id*.

The tort trespass to chattels applies to unwanted telephone calls. *Mey v. Got Warranty Inc.*, 193 F.Supp.3d 641, 647 (N.D. W.Va. 2016).**4** Even if the consumer does not answer the call or hear the ring tone, the mere invasion of the consumer's electronic device can be considered a trespass to chattels, just as "plac[ing a] foot on another's property" is trespass. *Id*. (quoting Thomas, J. concurring in *Spokeo v. Robins*, 136 S.Ct. 1540, 1551, 194 L.Ed.2d 635 (2016)). Unwanted phone calls cause concrete harm, including even "the cost of electricity to recharge the phone". *Id*. at 644-645. Intangible harms include "wasting the consumer's time". While certainly small, the cost is real, and the cumulative effect could be consequential. *Id*.

Paragraph 16 of Mohon's Complaint states "Defendants and/or their agents harassed her[.]" Paragraphs 19-28 describe in detail how they harassed her. Paragraph 53 further states how Plaintiff was injured by "an obnoxious nuisance". Paragraph 61 states the unlawful behavior was an "aggravating waste of Plaintiff's time". In *Palm Beach Golf Center v. Sarris*,

---

4    citing *Czech v. Wall St. on Demand*, 674 F.Supp.2d 1102, 1122 (D.Minn. 2009) (declining to dismiss cell phone owner's trespass to chattels claim against sender of unwanted text messages); *Amos Financial, L.L.C. v. H&B&T Corp.*, 48 Misc.3d 1205(A), 2015 WL 3953325, at *8 (N.Y.Sup. Ct. June 29, 2015) (occupying memory of answering machine and interfering with unencumbered access to phone would have been trespass to chattels if proven).

781 F.3d 1245, 1259 (11th Cir. 2015) the lower court dismissed a common-law conversion claim in a TCPA case because actual damages were allegedly "de minimus".  The Court of Appeals reversed because the amount of damages is "wholly irrelevant in assessing the legitimacy of the initial cause of action".   See *Id*. at 1259.

### Plaintiff's Complaint states a claim for Civil Conspiracy

Civil conspiracy is an agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means. *Las Luminarias of the N.M. Council of the Blind v. Isengard,* 1978-NMCA-117, 92 NM 297, 300, 587 P.2d 444, 447 (Ct.App.1978).  The existence of the conspiracy must be pled either by direct allegations or by **allegation of circumstances from which a conclusion of the existence of a conspiracy may be reasonably inferred**.  *Id*.   Plaintiff's Complaint plausibly alleges both types of conspiracies involving Agentra as a co-conspirator:   1) conspiracy to accomplish unlawful telemarketing with enough deliberate anonymity that the conspirators were difficult to identify and locate,  and  2)  conspiracy to sell products and services by unlawful means (robo-calling cell phones and Do-Not-Call registered numbers). Civil conspiracy provides an independent basis for liability where a civil action in damages would lie against one of the conspirators.  *Salzman v. New Mexican Kennels, Inc.*, No. CV 14-0877 KBM/KK, 2015 WL 13662748, at *2 (D.N.M. June 8, 2015) (citing *Seeds v. Lucero*, 137 N.M. 859, 864 (Ct. App. 2009).

Plaintiff's Complaint, again, sets forth "specific wrongful acts" and claims of actual damages.  Allegations based on information and belief are sufficient to meet the liberal pleading requirements of Rule 8. *Trustees of the Auto. Mechanics' Indus. Welfare & Pension Funds Local*

*701 v. Elmhurst Lincoln Mercury*, 677 F. Supp. 2d 1053, 1055 (N.D. Ill. 2010).  Plaintiff must be allowed to conduct discovery.

### The Court has Specific Personal Jurisdiction over Agentra
### based on the contacts of its agents and co-conspirators

New Mexico's long-arm statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible.  *Tercero v. Roman Catholic Diocese,* 2002-NMSC-018, ¶6, 132 N.M. 312, 48 P.3d 50 (2002).   The statutory inquiry collapses into the constitutional analysis.  *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The long-arm statute lists acts sufficient for personal jurisdiction, but the necessity of a technical determination of whether a defendant committed such an act has been removed.  *Zavala v. El Paso County Hosp. Dist.,* 2007-NMCA-149, ¶10, 143 NM 36, 172 P.3d 173.  The analysis of whether the defendant transacted business or caused a tort in New Mexico merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process. *Tercero,* supra, 2002-NMSC-018, ¶ 8, 132 NM 312, 48 P.3d 50.

It is well-established that a single letter or phone call into New Mexico can be a sufficient basis for specific personal jurisdiction, even in general tort or contract actions that do not involve privacy or harassment law.  *Customwood v. Downey*, 1984-NMSC-115.  In *Customwood* the inquiry concerned whether the single contact was made to "initiate" business or whether it was merely to confirm or develop a relationship that was already established.  In a telemarketing case there is no question the intentional act complained of (a robo-call) is purposeful availment and

plaintiff can demonstrate a connection between the defendant's contacts and the cause of action. The question of specific personal jurisdiction over out-of-state telemarketers is not a close call.

Agentra participated in a relationship with others (by agency or conspiracy as set forth in detail above) who directed telemarketing calls into New Mexico, to Plaintiff specifically and as Plaintiff alleges in her Complaint. Agentra's agency relationship with the persons (the other defendants alleged in Plaintiff's Complaint) who actually made or initiated the unlawful telemarketing calls at issue, makes Agentra subject to the specific personal jurisdiction of this Court. *Santa Fe Techs. v. Argus Networks,* 2002-NMCA-030. **The Telephone Consumer Protection Act ("the TCPA") was specifically intended to give local courts, in the places telemarketing calls were directed into, jurisdiction over the persons of out-of-state callers**.

Congress passed the TCPA because of "voluminous consumer complaints about abuses of telephone technology" and because "telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls". *Mims v. Arrow Financial Services*, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012). Many states had expressed a desire for federal legislation. *Id.***5** Part of Congress's intent was to "protect the privacy of individuals"; Congress thus "passed a statute providing that out-of-state telemarketing calls directed into a State would be subject to the laws of the receiving State". *Id.*, 132 S.Ct. at 751. To further educate us about the Act's intent, *Mims* also quotes the Act's sponsor Senator Hollings:

---

5   Prior to the TCPA, the federal Communications Act preempted state anti-telemarketing laws and therefore consumers had no local remedies. Over 40 states, including New Mexico, had enacted measures restricting unsolicited telemarketing. *Foxhall Realty v. Telecomm. Premium Services*, 156 F.3d 432, 437 (7th Cir. 1998). See the statute the subject of Plaintiff's Complaint in this matter: NMSA § 57-12-22.

"**. . . . . it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court....**

"**Small claims court** or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, **it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages**. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill."

Personal jurisdiction over Agentra can hardly offend traditional notions of fair play and substantial justice where the TCPA was specifically intended to give this Court personal jurisdiction.  See for example: *Rinky Dink v. Electronic Merchant Systems*, no. 2:13-cv-01347, W.D. Washington, doc 78 filed on 9/30/14 ("There appears little dispute - nor could this Court imagine how there could be any dispute - that this cause of action arises out of the calls . . . . . directed into the state", and quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) - "A single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state");  *Baker v. Carribean Cruise Line*, no. 3:13-cv-08246, D. Az., doc 23 filed on 3/6/14  (telemarketing calls into the forum state sufficient for specific personal jurisdiction);  *Abramson v. CWS Apartment Homes*, no. 2:16-cv-00426, doc 37 filed on 10/24/16 (**footnote 47** collecting cases that found purposeful direction based on allegations a telemarketing call was directed to a number bearing the state's area code).  Paragraphs 19-21 of Plaintiff's Complaint state "Defendants or their telemarketers" have repeatedly called Plaintiff's cell phone number 505-501-3610 and when she answered their calls she was greeted by a pre-recorded message or artificial voice.

The court must also confirm that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Klein Frank PC v. Girards,* 932 F.Supp.2d 1203, 1211 (D. Colo. 2013). This is merely an inquiry whether the Court's exercise of personal jurisdiction over defendant would be "reasonable in light of the circumstances of the case". *Id.*[6] The defendant bears the burden at this stage to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, supra, 514 F.3d 1063 at 1080. Most such considerations may be accommodated through means short of finding jurisdiction unconstitutional. *Burger King Corp. v. Rudzewicz* , 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Court resolves all factual disputes in favor of the plaintiff in determining whether plaintiff has made a prima facie showing of personal jurisdiction. *Old Republic Ins. Co. v. Continental Motors*, 877 F.3d 895, 903 (10th Cir. 2017).

Again, jurisdiction can hardly offend traditional notions of fair play and substantial justice where both the TCPA and NMSA 57-12-22 were specifically intended to give New Mexico residents local remedies against the harassment of out-of-state telemarketers. Agentra attacks Plaintiff's allegations that it has agency or vicarious liability for the phone calls at issue. Its arguments are without merit as set forth in detail below. But its arguments are also just arguments of <u>fact</u> whereas a motion to dismiss only addresses issues of <u>law</u> (the sufficiency of the Complaint). Beyond Defendant's meritless fact-intensive arguments about its alleged lack of agency-liability for unlawful telemarketing it makes no argument or showing whatsover that would "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."

---

6       See also again *Abramson v. CWS Apartment Homes*, no. 2:16-cv-00426, doc 37 filed on 10/24/16, for jurisdictional discussion of fair play and substantial justice in telemarketing cases.

Given the current advances in transportation and telecommunications and the increasing interstate practice of law, any burden of litigation in a forum other than one's residence is substantially less than in days past.  *Ott v. Mortgage Investors*, 65 F.Supp.3d 1046 (D.Or., 2014), quoting *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir.2007).  See also *Tech Heads, Inc.*, 105 F.Supp.2d at 1152 ("air travel is neither prohibitively expensive nor time consuming, and [the defendant] has retained local counsel"); and *Am. Auto. Ass'n, Inc. v. Darba Enters., Inc.*, no. 09-cv-00510, 2009 WL 1066506, at *6 (N.D. CA, April 21, 2009) (same).  The Court can note Agentra has local New Mexico counsel.

The State of New Mexico has an interest in its statutes (NMSA 57-12-22) being enforced and in its residents not being harassed and having their privacy invaded by illegal telemarketing. Public policy is to deter illegal telemarketing with the statutes forming the basis of Plaintiff's claims.  The TCPA is meant primarily to deter and to redress wrongs to the public generally. *Hannabury v. Hilton Grand Vacations*, 174 F.Supp.3d 768, 775 (W.D. NY, 2016).  Litigation in New Mexico is even less burdensome to Agentra considering its ready access to the information it will want to present regarding its alleged lack of agency relationship with the persons who actually called Plaintiff.   The fact of the New Mexico forum alone is not sufficiently unreasonable and burdensome on Defendant that the Court should decline to exercise jurisdiction, especially when the TCPA and NMSA 57-12-22 are specifically intended to give Plaintiff a local remedy in a local court.  New Mexico has additional interest in providing its residents a local forum when appropriate, such as when telemarketers and their co-conspirators direct unlawful telemarketing calls into the state.

Defendant's motion is not well-taken and should be denied.  But if the Court disagrees under Fed. R. Civ. P. 15(a)(2), a district court should "freely give leave [to amend] when justice so requires."  *Triplett v. LeFlore Cty., Okla.,* 712 F.2d 444, 446 (10th Cir. 1983).

PREMISES  CONSIDERED, Plaintiff requests the Court deny Defendant's motion or alternatively grant Plaintiff leave to cure any deficiencies in her Complaint.

RESPECTFULLY  SUBMITTED,

By:     /s/  Sid  Childress
_____
Sid Childress, Lawyer
PO  Box  2327
Santa  Fe,  NM  87504
childresslaw@hotmail.com
(505) 433 - 9823
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I caused this document and all Exhibits to be served in accordance with D.N.M.LR-CIV. 5.1 by filing it through the Court's CM/ECF electronic filing system.

/s/  Sid  Childress
_____

25